EDWARD GONZÁLEZ GARCÍA, JUAN GONZÁLEZ OCASIO y VICENTA GARCÍA, demandantes y recurrentes, *v.* GOBIERNO MUNICIPAL DE BAYAMÓN, ETC., demandados y recurridos.

*Número:* RE-92-39          *Resuelto:* 3 de abril de 1992

*José R. Oller Nazario*, abogado del recurrente.

## RESOLUCIÓN

A la moción de reconsideración, no ha lugar.

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió un voto disidente. El Juez Asociado Señor Fuster Berlingeri no intervino.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Voto disidente del Juez Asociado Señor Negrón García.

(En reconsideración)

"El diagnóstico como preámbulo al tratamiento médico constituye el elemento cardinal de la medicina [en casos de responsabilidad civil por alegado diagnóstico inadecuado. Los tribunales deben inquirir sobre la] calidad, *extensión y eficacia* [del diagnóstico] como punto de partida para el problema planteado de la negligencia médico-hospitalaria." (Énfasis en el original suprimido y énfasis suplido.) *Pérez Cruz v. Hosp. La Concepción*, 115 D.P.R. 721, 735 (1984). No podemos olvidar que el acopio negligente de información esencial es fuente que genera responsabilidad profesional en daños. Íd.

## I

Edward González García y sus padres Juan y Vicenta presentaron en el Tribunal Superior, Sala de Bayamón, una demanda en daños y perjuicios por impericia médica contra el Municipio de Bayamón. Alegaron que Edward, de 20 años, fue atendido negligentemente en el Dispensario Municipal Buena Vista (en adelante Dispensario) donde acudió por tres (3) días consecutivos hasta ser tardíamente referido al Hospital Regional de Bayamón, donde se le tuvo que operar de urgencia una peritonitis por apéndice perforado. Se le imputó negligencia al personal médico del Dispensario por no identificar ni diagnosticar la apendicitis a tiempo mediante diagnóstico diferencial.

El Municipio de Bayamón negó la responsabilidad. Oportunamente el ilustrado tribunal de instancia (Hon. Salim Chaar Padín, Juez) dictó sentencia en la que declaraba sin lugar la demanda. Conforme a la sentencia, suple-

mentada por el análisis directo del récord médico,[1] el 11 de abril de 1988 Edward acudió solo al referido dispensario, pues presentaba dolor abdominal y diarrea la noche anterior. El récord médico demuestra, además, tres (3) episodios de vómitos en proyectil y gases. Fue atendido por la doctora de turno quien, luego de examinarlo, diagnosticó provisionalmente *gastroenteritis* aguda, ordenándole medicamentos, seguir una dieta líquida y un recuento sanguíneo completo (en adelante C.B.C.).

Al día siguiente, Edward regresó al Dispensario con el resultado del C.B.C. *Se quejó nuevamente de dolor abdominal, esta vez más severo en el bajo vientre*, náuseas *y molestia al orinar.* Luego de otro examen físico, análisis de laboratorio y una consulta con otro médico, se le diagnosticó *hepatitis.* Cabe señalar que, de ordinario, un diagnóstico de hepatitis presenta un cuadro de dolor en el vientre superior y las células blancas linfocíticas aumentadas. Tampoco sugería un cuadro viral, pues el análisis de sangre reflejaba un recuento anormal de células blancas en exceso de veinte mil (20,000) y un incremento en células segmentadas *no linfocíticas*, que son las que suben en infecciones virales. Aun así, no hay una sola anotación indicativa de que la doctora consideró la posibilidad de una *apendicitis.* Sólo ordenó pruebas de corroboración del diagnóstico de hepatitis.

Al otro día Edward volvió, esta vez acompañado de su padre. Durante el examen físico se le encontró dolor abdominal y rebote a la palpación. Los laboratorios fueron normales, excepto un aumento en la orina de los niveles de bilirrubina. No obstante este cuadro, la doctora, esta vez,

---

[1] Del expediente médico incluido en el apéndice no surge que en el Dispensario Municipal Buena Vista Edward fuera objeto de examen físico completo y adecuado el 11 de abril de 1988. La nota de progreso expone que se quejó de dolor abdominal, vómitos en proyectil (tres (3) la noche anterior), flatulencia y que no tenía diarrea desde la noche anterior. No observamos ninguna anotación del encuentro médico-paciente de ese día que nos permita inferir que se efectuó un examen físico completo.

hizo un diagnóstico provisional de *uropatía obstructiva y pancreatitis*. Fue referido a la Sala de Emergencia del Hospital Regional de Bayamón.

El Hospital Regional de Bayamón se encontró con el cuadro de dolor abdominal difuso, náuseas, vómitos, fiebre y diarrea, y se emitió un diagnóstico provisional de *abdomen agudo*. Esa noche se le practicó una laparotomía (*celiotomy*). Al día siguiente, 14 de abril, fue operado de emergencia por tener apendicitis aguda perforativa (peritonitis).

No obstante esta prueba, el juez de instancia concluyó en la sentencia que la doctora actuó razonablemente ante el cuadro clínico que presentaba Edward. Determinó que no presentaba la sintomatología significativa de *apendicitis* —dolor localizado en el lado derecho del bajo vientre— por lo que presentaba más de una posibilidad de diagnóstico.

Inconforme, Edward acudió ante nos el 23 de enero de 1992. Con nuestro disentir, el 21 de febrero, la mayoría denegó el recurso. En reconsideración, dejamos constancia de nuestra insatisfacción judicial.

## II

*El trasfondo expuesto revela elocuentemente, como un hecho no contradicho, que nunca se consideró seriamente la posibilidad de una apendicitis. Es inconcebible.*

Desde la primera visita el 11 de abril de 1988, Edward presentaba dolor abdominal, gases y diarrea la noche anterior, y tres (3) episodios de vómito. Obviamente, el examen físico realizado ese día fue inapropiado, lo que conllevó un diagnóstico provisional erróneo de *gastroenteritis aguda*. El cuadro de dolor abdominal físico continuó incrementándose. Los otros diagnósticos provisionales de hepatitis y uropatía obstructiva fueron incompatibles con

los síntomas y resultados de laboratorio, considerando, además, su edad e historial.

Todavía en el último momento en el Dispensario, a pesar de que el examen físico, *por primera vez*, arrojó dolor abdominal y rebote a la palpación, increíblemente no se consideró la posibilidad de un diagnóstico diferencial de apendicitis. Decimos increíble, pues una vez fue examinado en el Hospital Regional de Bayamón, se le diagnosticó inmediatamente un abdomen agudo, se solicitó una consulta a cirugía y se consignó, como uno de los diagnósticos de impresión (R/O), *apendicitis perforativa*.

En resumen, la prueba y los propios récord médicos demostraron que la recopilación médica de información necesaria sobre Edward fue incompleta y, por ende, la interpretación y el análisis de esa limitada información fue equivocada. El error de diagnóstico fue producto de negligencia, lo cual a su vez propició el deterioro de su condición. *Morales v. Hosp. Matilde Brenes*, 102 D.P.R. 188 (1974).

## III

No se debate la importancia del examen físico para el diagnóstico de apendicitis. La literatura médica nos informa que "[m]ás del 95% de los enfermos con apendicitis aguda presenta dolor como primer síntoma; le siguen la náusea y el vómito. El dolor aparece de manera característica en el área periumbilical y se desplaza más adelante al cuadrante inferior derecho del abdomen. ... El examen físico por lo general pone de manifiesto una hipersensibilidad dolorosa en el cuadrante inferior derecho. Es común el dolor localizado ante la descomposición brusca; *cuando el dolor es generalizado sugiere perforación*. Los ruidos intestinales son variables y siempre se encuentra leucocitosis...". (Énfasis suplido.) L. Barth Reller *et al.*, *Me-*

*dicina Interna Clínica*, Méjico, Ed. Limusa, 1987, págs. 257–258.

En 10 *Courtroom Medicine* Sec. 10.20, pág. 10-10 (1985), se señala que "la apendicitis debe siempre ser segunda, si no la primera, en un diagnóstico diferencial sobre dolor abdominal agudo". (Traducción nuestra.) "La apendicitis es la condición más común que ocasiona dolor abdominal y que requiere cirugía o una consulta inmediata con un cirujano." (Traducción nuestra.) Íd., pág. 10-8. "Al tratar una apendicitis aguda la clave es proceder con rapidez, ya que el 15 por ciento de las roturas de apéndice ocurre dentro de las primeras 24 horas de los síntomas y el 40 por ciento, dentro de las 48 horas." (Traducción nuestra.) Íd., Sec. 10.50, pág. 10-22.

Lo expuesto nos lleva a concluir que no estamos ante un mero error razonable de juicio médico, sino ante una situación donde el proceso de evaluación y diagnóstico de Edward durante tres (3) días fue claramente inadecuado y negligente.

Debimos expedir y revocar.